In the Matter of the ESTATE of S. V. ROBERTS, a/k/a Samuel V. Roberts a/k/a Samuel Verne Roberts, Deceased.

No. 53545.

Supreme Court of Iowa.

Oct. 14, 1969.

Alfred A. Beardmore and T. A. Beardmore, Charles City, for appellant.

Dunkelberg & McKinley, Osage, for appellee.

LARSON, Justice.

Pursuant to the admission to probate of the will of S. V. Roberts, deceased, in December 1967, Donna M. Shoars, a daughter beneficiary under the will, in February 1968, filed an application in the estate to construe the will alleging that paragraph 4 thereof, which granted an option to decedent's son Verne A. Roberts to buy "the 240 acres in Floyd County, Iowa, for $300.00 per acre" was inconsistent and in conflict with paragraphs 2 and 3 of the will and was null, void, and of no effect.

The trial court construed the will in applicant's favor and decreed that paragraph 4 of the will is a nullity and of no force and effect, that the 240 acre farm in Floyd County descended to and vested in those persons named in paragraph 5 of the will, and that they are equal owners of that real estate. The executor of the estate appeals, and we reverse.

S. V. Roberts, also known as Samuel Verne Roberts and as Samuel V. Roberts, died on December 12, 1967, and his will made and executed December 18, 1957, was duly admitted to probate. It provided for the payment of debts, expenses of last sickness and burial be first paid, and stated:

"(2) To my beloved wife, Alma M. Roberts, I hereby give, devise and bequeath all of my personal property up to the amount of $40,000.00 and should my personal property not amount to $40,000.00, I then give her so much of the real estate as shall be necessary to make her a total of $40,000.00, said real estate to be of her own choosing.

"(3) To my beloved wife, Alma M. Roberts, I hereby give, devise and bequeath a life use of all of my property, both real and personal, with full authority to sell, mortgage or dispose of any, or all of it, and with authority to change the form of any investment, and I further authorize the use of so much of the principal as shall be necessary to maintain her in her usual station of life, and to bury her but that a sale, mortgage or change of the form of any investment, or the use of the principal shall be made only upon order of Court authorizing the same, it being my intention to have the Court pass upon the necessity and wisdom of such sale, mortgage, transfer or use, and whatsoever shall seem wise to the Court, after a proper investigation of the same, shall be my Will, for I realize that conditions and needs change.

"(4) I further direct my executor to sell to my son, Verne A. Roberts the 240 acres in Floyd County, Iowa, for $300.00 per acre unless I shall have sold it to him myself prior to my death.

"(5) After the said life use given above, I hereby give, devise and bequeath all of my property that remains both real, personal or mixed to my four children, they being Mrs. Marie E. Roberts, Irene G. Muller, Verne A. Roberts and Donna M. Shoars in equal shares, the same to be theirs absolutely."

Paragraph 6 nominated his wife to be executrix, and also provided, if she does not act, that his son, Verne A. Roberts, be appointed executor without bond.

Alma M. Roberts died on January 23, 1968, and Mervin D. Muller became the executor of both the estate of S. V. Roberts and the estate of Alma M. Roberts. He alone appeared to resist applicant's petition to construe. Since Alma M. Roberts had not made an election prior to her death, Muller as her executor filed an election on March 13, 1968, to take certain property of decedent under paragraph 3 of his will in lieu of the $40,000 bequest. The farm land in controversy here was not a part of that property taken.

This appeal presents two questions for our consideration: (1) Was the intent of the testator as disclosed by the words used in his last will and testament clear and unambiguous? (2) Were subsequent provisions of the will so inconsistent and repugnant to the other provisions thereof as to require their voidance as contrary to law?

■ I. The governing rule in the construction or interpretation of a testamentary disposition is the intention of the testator. This rule is so well established that any citation of authority for it would not aid ·this opinion. Nevertheless, this cardinal rule is sometimes overlooked or neglected by counsel and courts in the search for precedents to sustain desired conclusions. Precedents are often useful aids, but they should never lead to a construction of a will which, in view of the existing situation, clearly was not in the mind of the testator. In re Estate of McCulloch, 243 Iowa 449, 457, 52 N.W.2d 67, 72, and citations. It was said in In re Estate of Pottorff, 216 Iowa 1370, 1373, 250 N.W. 463, 465: "Rules of construction of wills are only useful when they are an aid to the court in ascertaining the intent of the testator. No arbitrary or technical rules of construction should prevail where the wording of the will itself expresses the testator's intent, * * * the testator has the legal right to make any distribution of his property he may elect, not contrary to law or public policy, and in doing so the testator may provide under what conditions certain devises and gifts will pass and become effective." Also see Lytle v. Guilliams, 241 Iowa 523, 41 N.W.2d 668, 16 A.L.R.2d 1377.

■ Our position in will construction cases was summarized in In re Estate of Larson, 256 Iowa 1392, 1395, 131 N.W.2d 503, 504, and citations. We said the law is well settled (1) the testator's intent is the polestar and must prevail; (2) his intent must be gathered from a consideration of (a) all the language contained in the four corners of his will, (b) his scheme of distribution, (c) the circumstances surrounding him at the time he made his will, and (d) the existing facts; and (3) technical rules or canons of construction should be resorted to *only* if the language of the will is clearly ambiguous or conflicting or the testator's intent is for any reason uncertain. Also see In re Estate of Zang, 255 Iowa 736, 739, 123 N.W.2d 883, 885; Gilbert v. Wenzel, 247 Iowa 1279, 1281, 78 N.W.2d 793, 795; Porter v. Tracey, 179 Iowa 1295, 162 N.W. 800; 95 C.J.S. Wills § 591, p. 752.

■ On the other hand, it is equally well established that the testator's intention must not be ascertained from a single part or paragraph of the will, but the instrument must be read and considered as a whole, each part in connection with every other

part and with the entire will, and each part given meaning and operation if possible. We said in McCulloch, supra, at page 457 of 243 Iowa, page 72 of 52 N.W.2d: "It must be assumed that each part of the will was incorporated by the testator with some definite purpose, and it should not be discarded or disregarded without sound reasons." We also pointed out therein that the intention of the testator must be gathered from the words of the will itself if their meaning as a whole is clear, unambiguous and unequivocal. We seek the meaning of the words actually used and must remember, where that is clear, there is no reason for construction of the will or for the use of arbitrary and technical rules or canons of construction in ascertaining the testator's intention. See also In re Estate of Syverson, 239 Iowa 800, 32 N.W.2d 799; Tague v. Tague, 248 Iowa 1258, 85 N.W. 2d 22.

■ Certainly the form of the will has no bearing on the intentions of the maker, and we have often held that the arrangement of the will or the order in which its clauses or paragraphs appear is not controlling and may be of little significance since the will must be read and construed as a whole. In re Estate of Glandon, 219 Iowa 1094, 1097, 260 N.W. 12, 13; In re Estate of McCulloch, supra; In re Will of Richter, 212 Iowa 38, 43, 234 N.W. 285; 57 Am.Jur., Wills, § 1124, p. 719. In Richter, there was an apparent conflict between Items 3 and 4 of the will and we pointed out testator's intent was to be gathered from the entire will and all parts therein must be considered together and construed and given force and effect, if possible, and that it is permissible to transpose words, expressions, and even sentences to determine the testator's intent. 1 Redfield on the Law of Wills (4th Ed.) 445 was quoted with approval, and states: "The rule seems to be pretty clearly established that, where the testator makes a general devise, or bequest, which would include the whole of his estate, and in other portions of the will makes specific dispositions,

these shall be regarded as explanations, or exceptions, out of the general disposition; and it will not be important, in such case, whether the general or the special provisions come first in order, since, in either case, the general disposition will be regarded as made subject to the more specific ones." It was held the intent of the testator was quite apparent, and that the prior paragraph of "the rest, residue, and remainder" should be transposed to the end of the will, and by so doing the testator's intent could be fully accomplished.

In the case at bar the trial court seemed to give considerable weight to the arrangement of this will, and counsel seemed to concede that if paragraph 4 had preceded paragraphs 2 and 3, the option would not have interfered with the bequests in paragraphs 2, 3 and 5. We find no merit in those positions and are convinced here that the arrangement did not have significance, at least to the extent that it obscured the testator's clear intent.

II. Some confusion exists as to what is contrary to law or public policy, and a number of decisions have been rendered by this court limiting the right of a testator to defeat, destroy or limit the enjoyment of a bequest by a subsequent paragraph of his will. In Iowa City State Bank v. Pritchard, 199 Iowa 676, 678, 202 N.W. 512, 513, it is said: "It is well settled that a testator cannot make an absolute devise of property in fee, and in a subsequent clause of his will defeat or destroy his gift or limit the enjoyment of the thing given." This view was specifically reaffirmed in Schmidt v. Claus, 250 Iowa 314, 317, 93 N.W.2d 592, 594. We find no fault with this rule of law and recognize that, whether it be called a repugnancy or an inconsistency, any attempt in a later paragraph of a will which of necessity will defeat, destroy or limit a specific bequest previously given is contrary to law and should be held void. It is obvious, however, where testator's intention is perfectly clear, the courts do extend every effort to find no inconsistencies and, where possible, they attempt

to resolve conflicts that would tend to thwart the apparent will of the testator. In re Estate of Fleck, Iowa, 154 N.W. 2d 865, 867, 868, and citations. In In re Estate of Hogan, 259 Iowa 887, 891, 146 N.W.2d 257, 259, we held the testator, in subsequent clauses, meant only to recommend to specific devisees of fees that they use them in a manner wished by the testator. No irresolvable conflict was found to exist in that will. To the same effect, see 96 C.J.S. Wills § 1011a, p. 536, and 23 Am.Jur.2d, Deeds, § 159, pp. 205, 206.

■ Regardless of some past pronouncements, we now prefer the rule that only where subsequent provisions of a testator's will are clearly in conflict with specific gift provisions and both cannot stand, can the clear and obvious intent of the testator be disturbed and the subsequent provisions be declared ineffective. In re Estate of Larson, supra, 256 Iowa 1392, 131 N.W.2d 503, and citations; 57 Am.Jur., Wills, § 1124, p. 719.

III. It is appellee's contention that, since the inheritance tax appraisers had valued the Floyd County farm at $108,000, the testator had attempted to limit or destroy the bequests previously given to the wife and other children by the provisions of paragraph 4. She contends the option given Verne Roberts to purchase the farm property at less than its value effectively reduced the "property" bequeathed by the previous paragraphs. The only reference to specific property in this will is found in paragraph 4. We find no other specific property bequeathed in fee or any other specific property referred to in this will. All other reference to grants was in general terms. At the time of testator's death the wife was given personal property to be selected by her of the value of $40,000 and a life estate in all other property, real and personal, of which testator died seized. At the same time Verne Roberts was given the right to purchase the Floyd County farm at $300.00 per acre, and thus might convert that real property into personal property. Appellee further contends the right to the remainder of the property, in whatever form that might be, vested in the four children of testator at the time of his death.

■ We find no fault with these contentions. However, the vital question here does not concern the time of vesting of rights but the identity of the property referred to by the testator in each bequest. It seems clear to us that the general bequests of property in paragraphs 2, 3 and 5, must refer to testator's property generally, and, because of the options granted to the wife, and to Verne in paragraph 4, the form and value of this "property" is subject to change. In other words, this "property" consisted of real and personal property not used or selected by the wife prior to her death, and either the farm or $72,000 depending upon the exercise of Verne's option given in paragraph 4. We see nothing in this provision fatally inconsistent with the other bequests of "property" in the will.

This is not the case of a bequest of Blackacre to A and an attempt by a subsequent provision to grant an option to buy Blackacre to B. In such a case it must be conceded the second gift would be inconsistent and void. Clearly, an attempt to give inconsistent rights in a specific piece of property cannot be performed. Schmidt v. Claus, supra, 250 Iowa 314, 93 N.W.2d 592; Iowa City State Bank v. Pritchard, supra, 199 Iowa 676, 202 N.W. 512; Moore v. McKinley, 246 Iowa 734, 69 N.W.2d 73; Overturff v. Miller, 247 Iowa 284, 71 N.W. 2d 913; In re Estate of Welter, 253 Iowa 87, 111 N.W.2d 282; In re Estate of Lewis, 248 Iowa 227, 80 N.W.2d 347.

In Schmidt v. Claus, supra, where a will gave a life estate to testator's widow and, subject thereto, gave all his property to his four children in equal shares, it was held that subsequent paragraphs of the will conditioning further the rights of the survivors were repugnant to and inconsistent with the devise made to the children

and had no force and effect, and that the title to the property vested absolutely in the children subject only to the life estate to the widow.

In Iowa City State Bank v. Pritchard, supra, where the testator gave his wife a life estate with power of disposal in and to some valuable household goods and the remainder in fee to a third party, it was held that, even if the first clause of the will, standing alone, would have given the wife a fee, a mere reading of the subsequent clauses revealed the gift was intended only as a life estate, and that a subsequent devise in fee was not repugnant or void.

In Moore v. McKinley, supra, where testator devised certain land to his daughter during her life and at her death by fee to her son without qualification, condition or contingency, it was held the remainder interest vested in the grandson, that testator deprived himself of capacity to make any future disposition of the land, and that a subsequent provision in the will devising the land to surviving children of the grandson was repugnant and of no force and effect.

In Overturff v. Miller, supra, where in the second paragraph of testator's will, four of his sons were devised land in fee simple, and in the sixth paragraph there was a provision that in the event of the death of one or more of the sons without issue their interest should revert to the estate to be divided equally among the remaining sons, it was held the subsequent paragraph was of no force and effect because it is repugnant to the prior devise in fee simple.

In In re Estate of Welter, supra, testator devised property absolutely to his wife, and the court held that a subsequent paragraph of the will which requested her to bequeath that property to a named church was void as repugnant to the absolute devise.

In In re Estate of Lewis, supra, where testator devised all of his property to his wife in fee and in a subsequent paragraph of the will expressed the wish that she dispose of that property to the testator's heirs and to her heirs in such shares as she may designate, it was held the subsequent expressions in the will were merely precatory words and ineffective.

It is apparent from these cases that any provision of the will subsequent to an absolute devise of specific property in fee cannot be altered by subsequent devises in the will, but none reject explanatory or exceptional provisions in the will as to the property interest bequeathed, whether placed before or after the general bequest.

■ The word "property" as used in the case at bar was general, not specific, and was broad enough to include all of testator's property in any form. It was subject to explanation or limitation as to the fee intended by the testator. The option in paragraph 4 clarified the extent of the fee given. Iowa City State Bank v. Pritchard, supra. After the exercise of Verne's option, the will's general terms may still be carried out without involvement in inconsistencies. Obviously, such a holding is in accord with testator's expressed intention. To hold otherwise, we think, would be to defeat testator's clearly expressed desire by an arbitrary rule or technicality. This we decline to do. In re Estate of Barnes, 256 Iowa 1043, 1055, 128 N.W.2d 188, 194, 130 N.W.2d 227; Schmidt v. Claus, supra.

We conclude there is no such inconsistency or repugnancy here as to require a holding that paragraph 4 is void, and that the bequests found in paragraphs 2, 3 and 5, refer to property generally in any form provided for by the testator. Thus, the word "property" as used in this will includes either the farm or the receipts from the sale thereof to Verne Roberts should he exercise his option to purchase the farm.

IV. Since we find no ambiguity or uncertainty as to testator's intention expressed in the will, and no such conflict within its provisions which would require a finding of repugnancy or inconsistency as a

matter of law, we conclude any error of the court in refusing certain extrinsic evidence as to testator's intention herein need not be considered.

V. Since all the rights of the parties were clearly and legally fixed at the time of testator's death, and paragraph 4 clearly and legally extended to Verne the optional right to change the form and value of a part of the generally bequeathed property, there was no such inconsistency as to justify the reading out of this will that substantial part thereof. The case is, therefore, reversed and remanded for a decree consistent with this opinion.

Reversed and remanded with directions.

All Justices concur.