MARY ANN McKEOWN, Appellant, v. W. W. MORROW et al., Appellees.

**ESCHEAT: Liability of State—Interest.** One who proves his heir- ship to funds which are held by the state under an order of es- cheat, is entitled to interest on the fund only from the date of the decree which establishes such heirship, and then, only for such amount of interest as the state or its officers *actually* re- ceive after said date on the fund, as a school loan. (Sec. 3391, Code, 1897.)

*Appeal from Franklin District Court.—*EDWARD M. McCALL, Judge.

APRIL 4, 1918.

THIS case involves the right of a claimant to a fund held as for escheat. The opinion states the facts. The right was

denied by the court below.  Plaintiff appeals.—*Reversed and remanded.*

*Jno. M. Hemingway,* for appellant.

*H. M. Havner,* Attorney General, and *C. A. Robbins,* Assistant Attorney General, for appellees.

GAYNOR, J.—On March 1, 1908, one James Murray died intestate in Franklin County in this state.  An administrator of his estate was duly appointed.  After paying all claims and charges against the estate, there was left in the hands of the administrator for distribution, the sum of $7,853.99.  No person appeared, as heir or otherwise, to claim the estate in the hands of the administrator.  It was, therefore, adjudged to be in escheat, and an order was entered by the district court, directing the administrator to pay the sum so in his hands to the treasurer of the state.  In pursuance of such order, the administrator did pay to the treasurer of the state the full sum aforesaid, on the 21st day of April, 1911.  Thereafter, on October 9, 1911, the plaintiff herein appeared, filed a petition in the district court, setting up the facts above recited, and alleging that she was and is the sole heir of the said James Murray, and as such is entitled to have and receive the entire estate left by him, subject only to proper charges and expenditures necessary to the settlement of the estate.  In her application for the funds, she made the treasurer and auditor of state parties defendant.  A showing was thereupon made by her as to her heirship, and as to her right to receive the funds.  In that proceeding, the treasurer of the state appeared and contested her right.  The trial court found that plaintiff had established her right to the funds, and was entitled to judgment for the return of the money, as claimed in her petition, with accumulated interest, less such sum as the state was entitled to retain under the collateral inheritance law; and an order was, accordingly, duly entered.

The state appeared in said proceeding and filed an answer. An appeal was taken from the order and judgment of the court aforesaid to this court, and was, upon a hearing in this court, affirmed. Thereupon, the state, through its proper officers, paid over to the clerk of the district court, for the use and benefit of the plaintiff, the sum of $7,853.99, being the amount received by it, as aforesaid, less the sum due the state under the collateral inheritance statute. Thereupon, the plaintiff filed a further motion in the district court, requiring the said officers of the state to pay to her the interest that accumulated during the time it was held by the state under the order of escheat. This motion was overruled by the court, and from this, the plaintiff appeals.

The only question here for our consideration is whether or not, under the facts herein disclosed, the plaintiff is entitled to interest on the funds while the same remained in the hands of the proper officers of the state.

For a fuller statement of the facts in this case, see the opinion of this court filed in the former appeal, 167 Iowa 489.

In plaintiff's original application to have this fund returned to her, she prayed that, upon proof of her heirship, the judgment of escheat be set aside, and that an order be entered directing the treasurer and auditor to refund and pay over to her, not only the sum received under the order of escheat, but such interest also as had been received thereon by the auditor and treasurer during the time it was so held. The court in that proceeding decreed that the amount received be withdrawn and returned, with accumulated interest thereon, less the amount of the collateral inheritance tax due the state under the collateral inheritance tax law.

The allegations of plaintiff's motion now before us are that, while the money so received from the estate of James Murray was in the hands of the state and its proper officers, the money was loaned out at 4½ per cent interest, payable annually, and that the money continued to bear interest

at that rate until the 24th day of March, 1915, when the auditor of state recalled the sum of $4,000, and paid the same to the plaintiff; that the balance remained drawing interest until May 1, 1915, when the auditor paid the further sum of $2,000 to the plaintiff; that the balance then remaining, $1,409.69, remained in the hands of the officers of the state, bearing interest at 4½ per cent, until December 28, 1915, when the same was paid over to the plaintiff. Plaintiff further says that, notwithstanding the order and judgment in the case, the auditor has taken the interest as collected, and distributed it among the various counties of the state, and has refused to recall said interest and pay the same over. Plaintiff asks that a mandatory injunction issue, commanding the auditor to direct the various counties to pay back the amount of interest aforesaid distributed to them, and that, when so paid, the same be turned over to her.

The judgment of the court overruling this motion was entered on April 12, 1917, and from this action, this appeal is taken.

Two propositions present themselves:

The first is: Is the state liable for interest accruing upon money received by it, under an order of escheat, to the one who subsequently appears and proves his heirship?

Second. Though not liable under the law as written, is the decree requiring the state and its officers to pay over accumulated interest so binding upon the state and its officers that, though not liable at law for interest, they become bound to account therefor, by reason of the decree of the court, directing them to pay the principal sum with accumulated interest?

This judgment and order having been affirmed by this court on appeal, a third question arises, as an incident to the first two, to-wit: in the event the state or its officers are liable to the plaintiff for interest, from what time should interest be reckoned? Or rather, what accumulated interest is the plaintiff entitled to?

Section 3388 of the Code of 1897 provides:

"When the judge or clerk of the district court has reason to believe that any property of the estate of an intestate within the county should by law escheat, he must forthwith inform the state auditor thereof, and appoint some suitable person administrator to take charge of such property, unless an executor or administrator has already been appointed for that purpose in some county in the state."

Code Section 3389 provides for notice best calculated to notify those interested, or supposed to be interested, in the property.

Code Section 3390 provides:

"If within six months from the giving of such notice no claimant thereof appears, such property may be sold and the proceeds, under the direction of the state auditor, paid over by the administrator for the benefit of the school fund. If real estate, the sale shall be conducted and the proceeds treated like those of school lands."

Code Section 3391 provides:

"The money * * * shall be paid at any time within ten years after the sale of the property or the appropriation of the money, but not afterwards, to anyone showing himself entitled thereto."

Code Section 3387 provides:

"If there is property remaining uninherited, it shall escheat to the state."

Code Section 2838 provides:

"The permanent school fund, the interest of which only can be appropriated for school purposes, shall consist of * * * the proceeds of all intestate estates escheated to the state."

Article 9, Subdivision 2, Section 3, Constitution of Iowa, provides:

"All estates of deceased persons who may have died without leaving a will or heir, * * * shall be, and remain a

perpetual fund, the interest of which, * * * shall be inviolably appropriated to the support of common schools throughout the state."

Section 7 of the same article and subdivision provides:

"The money subject to the support and maintenance of common schools shall be distributed to the districts in proportion to the number of youths, between the ages of five and twenty-one years, in such manner as may be provided by the general assembly."

An estate does not become fully escheated until the expiration of ten years. Section 3387 of the Code of 1897 indicates that fact. It says:

"If there is property remaining uninherited [that is, at the end of ten years], it shall escheat to the state."

It then becomes a permanent part of the school fund of the state, and as such remains inviolable, the interest only to be used as indicated in the statutes hereinbefore quoted. Until the end of ten years, the state holds the funds in trust for the rightful owner; holds them under the provisions of Section 3390, for the benefit of the school fund. While it holds them as trustee, we think, clearly, under the provision of the statute, the school fund alone receives the benefit that may arise from the funds. The benefit that comes must come through the way of accumulated interest. The right of the state to hold the funds continues in its officers until the expiration of ten years, or until the heirship is established. If no claimant appears at the end of ten years, and establishes a right to the fund, then, without any further action on the part of the court, the fund escheats to and becomes a part of the permanent school fund of the state. If, however, one does appear within ten years, and establishes his right to the funds, then, under the provisions of Section 3391, it becomes the duty of the state to pay them to the one showing himself entitled thereto. After the claimant has fully established his right to the fund, it no longer becomes the subject of

escheat, for, under Section 3387, only the property remaining uninherited,—only the property remaining to which no heirship has been established within the ten years,—escheats to the state at the expiration of that time.

It follows, therefore, that, upon the establishment of plaintiff's heirship and her right to the fund so held by the state in the hands of its officers, to be paid over to one who should establish his title within the time limit, she became entitled to it immediately upon the entry of the decree establishing her heirship and her right to the fund. The state then had no longer a right to hold it, and no longer a right to appropriate the interest to any of the uses of the state. This fund never became a permanent part of the school fund, for the reason that, when plaintiff appeared, and established her right to it, the state had no longer a right to hold it, under the provisions of the state's own statute. The state said, in Section 3391:

"The money shall be paid at any time within ten years to anyone showing himself entitled thereto."

With this mandate from the state to its officers, it became their duty to pay the fund to the plaintiff immediately upon the establishment of her heirship. To hold it longer was holding it in violation of her right, and in violation of the mandate of the statute.

It appears from this record that plaintiff established her right to the fund, and, on the 7th day of February, 1913, the court entered its decree to the effect that she was entitled to the fund, as heir of James Murray, and directed these officers of the state, acting for the state, to pay the same over to her with accumulated interest. The provisions of Section 3390 to the effect that the sum received shall be held for the benefit of the school fund, we take it, refer only to that time between the time it is received and the time the rightful claimant to the funds establishes his heirship. In establishing the heirship, it is determined that the prop-

erty cannot escheat and never can become a part of the permanent school fund.   Upon the establishment of heirship, the claimant became entitled to the fund, and a duty arose out of this to pay the fund to her.   Any withholding after that time is in violation of the rights of the claimant, and in violation of the express provision of the statute, and any interest accumulating after heirship is established belongs to the claimant.

The fact that an appeal was taken postponed only her right to enforce her claim, but did not postpone or impair her right to the fund.   Her right to the fund dates from the establishment of her right to it, and that carried with it a right to the interest that accrued upon the fund after her right was established.   It is true the statute makes no provision for the payment of interest on the fund. The statute says the fund shall be held by the officers of the state for the benefit of the school fund.   This we take it to mean, until such time as the rightful owner of the property appears and establishes his heirship.   We construe the decree of the court involved here to mean interest that accumulated on the fund in the hands of the state after plaintiff's right to the fund had become fixed by the decree.   The question of interest seems not to have been discussed or considered on the former appeal.   Section 3038 of the Code of 1897 provides for the payment of interest on "money received to the use of another and retained beyond a reasonable time, without the owner's consent, express or implied."   This section provides for six per cent interest; but here, we think the state, holding, as it did, the fund in trust for the plaintiff, ought not to be required to pay more than the amount of interest actually received by it after the duty arose to repay it to the plaintiff.   The interest, therefore, that accumulated on the fund after the decree was entered fixing her right, ought to be accounted for by the state, up to the time of actual payment, and we think this is the purpose and intent of the law.

The action of the court, therefore, in overruling defendant's motion, is reversed, and the cause remanded, with direction to the court to enter decree in accordance with this opinion and the facts as they now appear in the record in that court.—*Reversed and remanded.*

PRESTON, C. J., LADD, SALINGER, and STEVENS, JJ., concur.