ELLIS BRADFORD, Appellee, v. OLIVE BELL MARTIN, Appellant.

**WILLS:** Estate Conveyed—Absolute Devise—Precatory or Repugnant
1 **Provisions.** A devise of real property "absolutely" to the devisee exhausts the estate of the devisor; and all subsequent provisions of the will expressive of a wish as to the manner in which the devisee shall dispose of the property must be treated as precatory, or as repugnant to the absolute devise, and therefore nugatory.

**WORDS AND PHRASES:** "Absolute" and "Fee Simple." The terms
2 "absolute title" and "fee-simple title" are synonymous.

**EXECUTORS AND ADMINISTRATORS:** Duties—Real Property.
3  Principle reaffirmed that ordinarily an executor has nothing what-
    ever to do with real property.

Headnote 1:  40 Cyc. pp. 1585, 1587.  Headnote 2:  40 Cyc. p. 1573.
Headnote 3:  24 C. J. p. 130.

*Appeal from Grundy District Court.*—GEORGE W. WOOD, Judge.

JANUARY 20, 1925.

AN action for partition of an 80-acre tract of land in
Grundy County.  From an adverse ruling on plaintiff's de-
murrer to her answer, defendant appeals.—*Reversed.*

*Willoughby, Strack & Sieverding,* for appellant.

*Mears & Lovejoy* and *Rogers & Ruppelt,* for appellee.

ALBERT, J.—Thomas Bradford was originally the owner of
this tract of land in controversy.  On his death, his will was
probated, on the 4th day of June, 1901.  His wife, Mary Ann
Bradford, died on the 13th of December, 1922.  The material
part of this will, after providing for the payment of his debts,
is as follows:

"I give all my property, both personal and real estate, of
which I may die possessed, of whatsoever the same may con-
sist, and wheresoever situated, to my wife, Mary Ann Brad-
ford, absolutely, and I appoint her executrix of this my will,
and I direct that she be exempt from giving any surety or sure-
ties on her official bond as executrix."

"3.  It is my wish that at the death of my wife, Mary
Ann Bradford, that after all her just debts have been paid,
what is then left shall be divided as follows:  $500.00 to be
divided between my grandchildren Wilmer Martin and War-
ren Martin, each to share an equal amount, i. e., $250.00 to
each of them.  After this amount has been paid, it is my wish
that all that remains be divided equally between my children,
Ellis Bradford and Olive Bell Martin, each to share alike."

The plaintiff's claim is that, under the terms of this will,
the surviving spouse, Mary Ann Bradford, took but a life

estate in the property in controversy. The defendant, in one division of her answer, pleads that Mary Ann Bradford took a fee-simple title. In the second division, she pleads that Mary Ann Bradford's title was in fee simple, sets out a copy of the will of Mary Ann Bradford, in which she bequeaths to Wilmer and Warren Martin each $250, "to be paid out of the property * * * heretofore devised" to her by her husband, Thomas Bradford, in his last will and testament; $1,000 to Ellis Bradford, payable out of the said property devised to her by her husband, as aforesaid. In Paragraph 4 of her will, she says:

"I give, devise and bequeath to my daughter, Olive Bell Martin, * * * all of the residue and remainder of my estate, including the residue of all property of every kind which I may now be possessed of or entitled to, or in which I may have any interest by devise under the provisions of the last will and testament of my husband * * *"

She claims that, by reason of the foregoing matters, defendant is the fee-simple owner of said property.

In a third division, she makes all of the allegations of Divisions 1 and 2 a part thereof, and further sets out the proceedings in the Thomas Bradford estate, wherein, in the petition of Mary Ann Bradford for appointment as executrix, she alleges that, "by the terms of the will of said deceased, all property of said deceased was left to the undersigned, Mary Ann Bradford;" and further, that, in her final report as executrix, she claimed that, by the terms of said will of the deceased, she is entitled to all of the property in said estate.

She alleges that plaintiff had notice of hearing of final report, her discharge as such executrix on the 28th of October, 1902; that the plaintiff acquiesced in the claim of the said Mary Ann Bradford in the said petition and final report; and that, by reason thereof, plaintiff is estopped from now claiming that Mary Ann Bradford did not take a fee-simple title.

The plaintiff demurs to each division of the answer, on the grounds that the matter stated in the divisions constitutes no defense to plaintiff's petition herein, and does not entitle the defendant to the relief demanded, or any relief. Each ground of the demurrer was sustained by the court.

Aside from the estoppel pleaded in the third division of

the answer, the whole question must turn on the construction of the will of Thomas Bradford.

It is too well settled to need citation of authority that the will is to be read by its four corners, and the intent of the testator must govern. All provisions therein are to be given full force and effect, if possible. It is equally settled that, where there are inconsistent or repugnant provisions, the first provision is held to express the intent of the testator, and the inconsistent or repugnant provisions are void. *Elberts v. Elberts,* 159 Iowa 332; *Goldsmith v. Petersen,* 159 Iowa 692; *Rona v. Meier,* 47 Iowa 607.

1. WILLS: estate conveyed: absolute devise: precatory or repugnant provisions.

When the gift to the first taker is absolute, the estate is exhausted, and nothing remains of which disposition can be made. *Reichauer v. Born,* 151 Iowa 456; *Law v. Douglass,* 107 Iowa 606; *Elberts v. Elberts,* supra.

Counsel suggests that a fixed rule ought to be made in this state to harmonize what they claim is an apparent conflict between the various opinions of this court on this question. They ask an impossibility. It is a rare thing to find two wills that are worded the same, and in many instances the addition or the subtraction of one word may change the whole effect of a will. The best that can be done under such circumstances is to lay down general rules that will apply to wills indiscriminately; and after this is done, then each will is to be construed in the light of these general rules and the context thereof.

It is to be noted that, under the first paragraph of the will, the decedent gives to his wife, Mary Ann Bradford, all of his property "absolutely," and subsequently expresses a "wish" that, at her death, out of what remains, a certain disposition is to be made thereof. The word "absolutely" in law has a varied meaning; but, when it is unqualifiedly used with reference to titles or interest in land, its meaning is fairly well settled.

2. WORDS AND PHRASES: "absolute" and "fee simple."

Originally, the two titles most discussed were "fee simple" and "alodium," which meant absolute. See 1 Bouvier (Rawle's Third Revision) 182; *Wallace v. Harmstad,* 44 Pa. 492; *McCartee v. Orphan Asylum Soc.,* 9 Cowen (N. Y.) 437 (18 Am. Dec. 516).

Prior to Blackstone's time, the alodial title was ordinarily called an "absolute title," and was superior to a "fee-simple title," the latter being incumbered with feudal clogs which were laid upon the first feudatory when it was granted, making it possible for the holder of a fee-simple title to lose his land, in the event that he failed to observe his feudatory oath. The alodial title was not so incumbered. Later, the term "fee simple," however, rose to the dignity of the alodium, or absolute estate; and since the days of Blackstone, the words "absolute estate" and "fee simple" seem to have been generally used interchangeably. In fact, he so uses them. See Book II, Chapter 7, pages *104, *105.

Fortunately, counsel's search of the cases has brought to light two cases with a will in each which is almost identical with the will under consideration. In a case from Michigan, *Moran v. Moran*, 143 Mich. 322 (106 N. W. 206), the will contained the following provision:

"I give and bequeath to my beloved wife, Mary E. A. Moran, all my property * * * to be hers absolutely, providing, however, that if at her death any of the said property be still hers, then said residue still hers shall go to my, not her, nearest heir or heirs."

The same contention was made in that case as in this; and it is held that the use of the word "absolutely" created a fee-simple title.

Equally forcible is the case of *Nunn v. O'Brien*, 83 Md. 198 (34 Atl. 244).

In 1 Corpus Juris 363, Note 41 [d], it is said:

"An absolute gift is one where not only the legal title, but the beneficial ownership as well, is vested in the donee."

It is further said in 1 Corpus Juris 362, 363:

"The words 'absolute' and 'absolutely' * * * usually carry the fee."

Even a cursory investigation of this question shows that the courts, text-writers, and even this court itself, have quite generally used the words "absolute" and "absolutely" and "fee-simple title" interchangeably. This court had occasion to pass on this term "absolute interest," in the case of *Davis v. Iowa State Insurance Co.*, 67 Iowa 494, where we said:

"It becomes a material question for our determination whether plaintiff held an 'absolute interest' in the property insured. By the term 'absolute interest' we understand a complete and perfect interest; not an estate for years or for life. An estate in fee simple is meant."

It is claimed and conceded that the will in question was drawn by a layman, and not a lawyer; and for this reason it is urged that such facts should be considered, as tending to show that only a life estate was intended to be granted. To our minds, however, this argument is not forceful. The average layman does not have the term "fee" and "fee simple" in his vocabulary, and to him, "absolutely" is the strongest word known; and even though it were within his vocabulary, when the courts and attorneys generally use these words interchangeably, the layman ought to be entitled to the same privilege.

Viewed from another angle, it is to be noted that the testator first provides for the payment of his debts, then gives his wife all of his property absolutely, and appoints her executrix without bond. This is a complete will up to this point; but in what appears to be an afterthought, he expresses a "wish" as to what shall be done with his property, if any remains, after the death of his wife. In fact, the wife so recognizes his wish. In her will she gives to the named grandchildren, out of this identical property, the exact amount that he in his will wished them to have; and to this extent at least, she carried out the wishes expressed in her husband's will.

We deem the use of the word "wish" in these bequests purely precatory; but if not so, it creates a repugnance, as against the clause giving a fee-simple title to the wife, and therefore is void. It follows of necessity, therefore, that, the wife having taken the fee-simple title to the property in controversy, the defendant herein, under the will of said wife, takes that fee-simple title to the land in controversy.

Some claim is made by reason of certain statements contained in the petition of Mary Ann Bradford for appointment as executrix, and in her final report, wherein she stated, in

3. EXECUTORS AND ADMINISTRATORS: duties: real property.

substance, that she claimed to own all the property of Thomas Bradford, deceased; and it is claimed that the plaintiff herein, though having

notice of said final report, made no objection thereto, but acquiesced therein. To this claim there are two answers: As such executrix, she had nothing whatever to do with the real estate in controversy, as her power is limited by statute to dealing with the personal property. In the second place, matters alleged lack some of the elements, and do not rise to the dignity, of an estoppel. It must follow, therefore, that the district court should not have sustained plaintiff's demurrer to the defendant's answer on any of the grounds therein specified.—*Reversed.*

FAVILLE, C. J., and EVANS, STEVENS, ARTHUR, and DE GRAFF, JJ., concur.